# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THOMAS COLEMAN, #618415

                Petitioner,                       Case Number: 2:09-CV-13842

v.                                                     HON. ANNA DIGGS TAYLOR

NICK LUDWICK,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Thomas Coleman has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, challenges his conviction for first-degree murder. For the reasons set forth below, the Court denies the petition.

## I. Background

Petitioner's conviction arises from the shooting death of Waad Shaba at a King Video store in Detroit on October 5, 2005. He was tried jointly with co-defendant Reginald Williams.

Rubia Hayes testified that she was in the store at the time of the shooting. She was in the back of the store and observed two men walking down Six Mile Road. She saw one of the men enter the store, approach the counter with a gun, and demand money. Seconds later, she heard gunfire and saw the two men run off in the direction from which they had come.

David Banks was in the store at the time of the shooting. Because he was deceased at the time of trial, his preliminary examination testimony was read into the record. He testified that, at

the time of the shooting, one black man entered the video store and approached the counter, while a second black man remained in the store's entryway. The first man pulled a gun and demanded money. Banks then heard gunshots and dropped to the floor.

Marie Coleman, Petitioner's mother, testified that, on the night of the shooting, Petitioner came home between 9:00 and 10:00 p.m., and had been shot. He was bleeding from the hand and leg. Petitioner told his mother that he had been shot at a gas station on Seven Mile and Patton after getting into a disagreement with some men outside the gas station.

Police Officer James Pierce testified that he was one of the first officers to respond to the scene of the shooting. He found Shaba lying on the floor behind the store counter with a gun in his hand.

Dr. John Scott Somerset, an assistant medical examiner, testified that he performed the autopsy of the victim. He testified that Shaba suffered two gunshot wounds, one to the head and one to the leg.

Police Sergeant Robert Kohls testified that Petitioner was taken to the hospital on the day of the shooting and released into police custody the next morning. Sergeant Kohls interviewed Petitioner at the police precinct the day after the shooting. Petitioner admitted to being involved in a robbery at the video store. He identified his co-defendant as the shooter. He stated that he was shot twice and that after he was shot he and his co-defendant fled the store.

Police Officer Lance Newman testified that he was the officer in charge of investigating the video store shooting. He testified that after he learned of Petitioner's statement to Sergeant Kohls he interviewed Petitioner. Petitioner stated that he and co-defendant Williams started talking about robbing the video store weeks before they did so. When they entered the store,

2

Williams told Shaba to give him all the money. Shaba pulled a gun from behind the counter and began shooting. Williams returned fire. Petitioner ran from the store, but was shot twice as he was fleeing. He ran to his mother's home. On the way, he removed his bloody clothes and put them in a trash can. Officer Newman testified that he also interviewed Petitioner on the day of the shooting at the hospital where Petitioner was treated for his gunshot wounds. At that time, Petitioner denied any involvement in the video store robbery.

Detroit Police Officer Scott Shea testified that he responded to the report of a shooting at the video store. When he arrived, the area had already been cordoned off by other officers. He viewed the store's video surveillance tape and noted that there had been an exchange of gunfire during the robbery. He also noted that a trail of blood led from the store down the street and that the blood trail was obviously not the victim's. He also testified that, several days after the shooting, he was called to a location several blocks from the video store where a person had found a backpack containing bloody clothes. A DNA expert testified that blood on the shirt found in the backpack was consistent with Petitioner's DNA.

## II. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree felony murder. On September 7, 2006, he was sentenced to life imprisonment without possibility of parole.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

    I.     The evidence presented at trial was insufficient to convict him of felony murder.

    II.    The failure to instruct the appellant's jury that aiders and abetters must have the necessary specific intent to be guilty of a specific intent crime constitutes

reversible error as it denied him a fair trial.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Coleman*, No. 273057 (Mich. Ct. App. Jan. 29, 2008).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the sufficiency of the evidence and jury instruction claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Coleman*, No. 136022 (Mich. July 29, 2008).

Petitioner then filed the pending petition for a writ of habeas corpus. He raises the same claims raised in state court.

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28

4

U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

5

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

## IV. Discussion

### A. Sufficiency of the Evidence

In his first claim for habeas relief, Petitioner argues that insufficient evidence was presented to support his conviction. Petitioner was convicted of first-degree felony murder under an aiding and abetting theory.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006), *quoting Jackson*, 443 U.S. at 324 n.16. "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010), *citing Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, *citing Jackson,* 443

6

U.S. at 319.  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), *citing Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, __ U.S. __, 130 S. Ct. 665, 674 (2010), *quoting Jackson*, 443 U.S. at 326.

Under Michigan law, the elements of felony murder are: (1) the killing of a human being; (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm would be the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies enumerated in Mich. Comp. Laws § 750.316.  *People v. Smith*, 478 Mich. 292, 318-319; 733 NW2d 351 (2007).  To prove aiding and abetting of a crime, a prosecutor must show: (1) that the crime charged was committed by the defendant or some other person; (2) that the defendant performed acts or gave encouragement which assisted in the commission of the crime; and (3) that the defendant intended the commission of the crime or had knowledge of the other's intent at the time he gave the aid or encouragement. *People v. Moore*, 470 Mich. 56, 67; 679 NW2d 41 (2004).  To be convicted of aiding and abetting felony murder, "[t]he requisite intent is that necessary to be convicted of the crime as a principal," that is, malice.  *People v. Kelly*, 423 Mich.

7

261, 278; 378 NW2d 365 (1985). "[I]t therefore must be shown that the aider and abettor had the intent to kill, the intent to cause great bodily harm or wantonly and wilfully disregarded the likelihood of the natural tendency of his behavior to cause death or great bodily harm." *Id.* "The facts and circumstances of the killing may give rise to an inference of malice. . . . A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Carines,* 460 Mich 750, 757, 597 N.W.2d 130, 135 (1999) (internal quotation omitted). Malice may also be inferred from the use of a deadly weapon. *Id.*

The Michigan Court of Appeals, the last state court to issue a reasoned opinion regarding this claim, held that sufficient evidence was presented to sustain the first-degree felony murder conviction, reasoning, in pertinent part:

> Evidence showed that Williams entered the video store with Coleman and that Coleman stood in the entryway while Williams demanded cash from Shaba at gunpoint. Williams then shot Shaba and fatally wounded him. Williams and Coleman exited the entryway door together and ran in the same direction. Witness Rubia Hayes explained that in order to leave the store without proceeding to a different exit door around the cashier's counter, the entryway door must be held open. Because Coleman was standing in the entryway and Hayes noticed that the entryway door remained ajar throughout the incident before Coleman and Williams ran out, it is reasonable to infer that Coleman was holding the entryway door open in order to facilitate Williams and his escape. "'Aiding and abetting describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime[.]'" *Bulls, supra* at 627, *quoting Carines*, *supra* at 757. Additionally, Coleman admitted to police that, before the night of the shooting, he had talked to Williams about robbing the store. In light of these facts, a reasonable juror could conclude that Coleman performed an act that assisted in the killing of Shaba while assisting in the attempted commission of a larceny. Regarding whether Coleman acted with the requisite intent, we note[] that, contrary to defendant's argument, a jury may "infer defendant's malice independent of his knowledge of [his co-defendant's] intent." *Bulls, supra* at 627. Given the above analysis, a reasonable juror could "conclude that defendant 'intended to do an act in obvious disregard of life endangering consequences[.]'" *Id., quoting People v. Goecke*, 457 Mich. 442, 466; 579 N.W.2d 868 (1998). "The intent to do an act in obvious disregard of life-endangering consequences is

8

> a malicious intent." *Goecke*, *supra* at 466. Consequently, the intent required to convict Coleman of felony murder under an aiding and abetting theory is satisfied. Therefore, sufficient evidence exists to support Coleman's felony murder conviction.

*Coleman*, slip op. at 8.

Petitioner argues that the state court's holding is unreasonable because the fact that he ran after the shots were fired showed that he did not know the victim was going to be shot. In fact, the Michigan Court of Appeals held that the evidence supported a finding that Petitioner "intended to do an act in obvious disregard of life endangering consequences." *Id.* (internal quotation omitted). Thus, the malice element of felony murder was established by Petitioner's wanton and wilful disregard of this risk.

Petitioner argues that such a conclusion is not supported by the evidence. However, viewing all of the evidence in a light most favorable to the prosecution, as this Court must, the Court concludes that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

## B. Jury Instructions

In his second habeas claim, Petitioner argues that the trial court improperly instructed the jury regarding the intent necessary to find him guilty of aiding and abetting a felony murder.

Respondent argues that this claim is procedurally defaulted because defense counsel failed to object at trial. When considering habeas petitions, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved

9

complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

Generally, claims of erroneous jury instructions are not cognizable in federal habeas review unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). It is not enough to show that the instruction was incorrect under state law. *Estelle v. McGuire*, 502 U.S. at 71-72. The instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* at 147. "To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir.2008) (*quoting Austin v. Bell*, 126 F.3d 843, 846-47 (6th Cir.1997) (internal quotation marks omitted)). "When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the instruction 'in an unconstitutional manner.'" *Id.* at 455 (*quoting Victor v. Nebraska*, 511 U.S. 1, 6 (1994)).

The Michigan Court of Appeals, after finding that the issue was not properly preserved for review, nevertheless addressed the merits of the claim, holding, in relevant part:

> "In order to convict a defendant as an aider and abetter, the prosecution must show that the crime was committed by the defendant or another, that the defendant performed acts or gave encouragement that aided or assisted the commission of the crime, and that the defendant intended the commission of the

> crime or had knowledge that the principal intended its commission at the time the defendant gave the aid or assistance." *People v. Jones*, 201 Mich. App. 449, 451; 506 N.W.2d 542 (1993). Regarding aiding and abetting a felony murder, the jury must be instructed that the defendant acted with malice, which includes a defendant's participation in a crime "with knowledge of the principal's intent to kill or cause great bodily harm." *People v. Kelly*, 423 Mich. 261, 278; 378 N.W.2d 365 (1985).
>
> Here, the trial court provided the standard jury instruction on aiding and abetting, CJI2d 8.1, regarding intent. Specifically, the court instructed, "[T]he defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of giving the assistance." This instruction is "a clear and proper statement of the law." . . . Further, in response to a question from the jury, the court elaborated that to convict defendant as an aider and abetter, defendant, while participating in the crime, "would have to know that the other person intended to create a very high risk of death or great bodily harm knowing that death or great bodily harm would be the likely result." *People v. Aldrich*, 246 Mich. App. 101, 124; 631 N.W.2d 67 (2001). Although these instructions were somewhat imperfect, they fairly presented the element of specific intent to convict defendant of aiding and abetting a felony murder. . . . Therefore, Coleman's claim fails.[]

*Coleman*, slip op. at 9 (footnote omitted).

Although the Michigan Court of Appeals analyzed these claims under the plain error standard, the decision is sufficiently thorough to constitute a reasoned adjudication on the merits within the meaning of 28 U.S.C. § 2254(d). This Court therefore reviews the decision under AEDPA's deferential standard of review. *Fleming v. Metrish*, 556 F.3d 520, 531-32 (6th Cir.2009); *compare with Benge v. Johnson*, 474 F.3d 236, 246-47 (6th Cir. 2007) (where state court's plain error review did not amount to adjudication on the merits federal habeas court employs *de novo* review) and *Maples v. Stegall*, 340 F.3d 433, 436-37 (6th Cir. 2003) (same).

The trial court first instructed the jury regarding the elements of larceny. Specifically, the trial court instructed that larceny required proof of specific intent. The trial court then read CJI2d 8.1, including an instruction that specific intent is necessary for a finding of guilt based

11

upon an aiding and abetting theory.

Petitioner has failed to show that the state court's decision that the trial court's instruction adequately conveyed to the jury the elements of the charged crimes, including the intent element, was contrary to or an unreasonable application of Supreme Court precedent; nor has he shown that the instruction so infected the entire trial as to violate his right to due process. Thus, Petitioner is not entitled to habeas corpus relief with respect to this claim.

## V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI. Conclusion

The petitioner has not shown he is incarcerated in violation of federal law as determined by the Supreme Court.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

DATED: December 3, 2010  **s/Anna Diggs Taylor**
ANNA DIGGS TAYLOR
UNITED STATES DISTRICT JUDGE

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order of Dismissal was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on December 3, 2010.

Thomas Coleman, #618415
St. Louis Correctional Facility
8585 N. Croswell Road
St. Louis, MI 48880          s/Johnetta M. Curry-Williams
                             Case Manager